Steven N. Kurtz, Esq. (SBN 125972)
skurtz@laklawyers.com
Angie S. Lee, Esq. (SBN 254018)
alee@laklawyers.com
**LEVINSON ARSHONSKY & KURTZ, LLP**
15303 Ventura Boulevard, Ste. 1650
Sherman Oaks, California 91403
Telephone:    (818) 382-3434
Fax:              (818) 382-3433

Attorneys for Plaintiff
J D FACTORS, LLC, a California
limited liability company

FILED

2014 AUG 26  PM 4:03

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J D FACTORS, LLC, a California limited liability company, | CASE NO. **CV14-06709** DDP(FFMx) |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **(1)   PAYMENT OVER NOTICE** *[CAL. COM. CODE § 9406]* |
| REDDY ICE HOLDINGS INC., a Delaware corporation, | **(2)   ACCOUNT STATED** |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff, J D Factors, LLC, a California limited liability company ("Plaintiff" or "J D Factors") alleges the following for its complaint against Defendant Reddy Ice Holdings, Inc., a Delaware corporation ("Defendant" or "Reddy Ice") on personal

1
COMPLAINT

LEVINSON ARSHONSKY & KURTZ, LLP

1   knowledge as to J D Factors' own activities and on information and belief as to the

2   activities of Reddy Ice, as follows:

3   **PARTIES, JURISDICTION AND VENUE**

4       1.    Plaintiff is a California limited liability company with its principal place of

5   business in Rancho Palos Verdes, Los Angeles County, California and offices in

6   Wheaton, DuPage County, Illinois.  Plaintiff is in the business of factoring and holds a

7   duly issued finance lenders license from the State of California.  Plaintiff has three (3)

8   members:  Stephen P. Johnson, an individual; Brian P. Kelly, an individual; and the

9   Danis Grantor Trust, the trustee of which is Stephen P. Johnson.  Stephen P. Johnson

10   and Brian P. Kelly are domiciled in the State of California.  The beneficiaries of the

11   Denis Grantor Trust are domiciled in the State of California.  Therefore, Plaintiff is a

12   citizen of California.

13       2.    Defendant is the nation's largest packaged ice manufacturer.  Defendant

14   services customers in 31 states and the District of Columbia, maintains 58

15   manufacturing facilities and 67 distribution centers, and manufactures and distributes

16   1.8 million tons of ice annually.  Defendant is a publicly traded company.

17       3.    Defendant is, and at all relevant times hereto was, a Delaware corporation

18   with its principal place of business in Dallas, Texas.  Therefore, Defendant is a citizen

19   of Delaware and Texas.

20       4.    This Court has subject jurisdiction over this matter under its diversity

21   jurisdiction, pursuant to 28 U.S.C. § 1332(a), because: (a) the amount in controversy

22   exceeds $75,000.00 exclusive of interest and costs; and (b) Plaintiff and Defendant are

23   citizens of different states.  *See* 28 U.S.C. § 1332(a).

24       5.    This Court has general personal jurisdiction over Defendant because

25   Defendant maintains and has maintained substantial, continuous and systematic

26   contacts with this state and has purposefully availed itself of the benefits of doing

27   ///

28

LEVINSON ARSHONSKY & KURTZ, LLP

1   business in this state. Defendant maintains minimum contacts with this state sufficient

2   to subject it to service of process and sufficient to comply with due process of law.

3         6.     This Court has specific personal jurisdiction over Defendant because

4   Plaintiff's claims are related to Defendant's activities and contacts with the state.

5         7.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because

6   Defendant is a corporation that resides in this judicial district pursuant to 28 U.S.C. §

7   1391(c)(2).

8         8.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because

9   a substantial part of the events giving rise to the claim occurred in this district.

## BACKGROUND ON FACTORING

11         9.     Plaintiff is in the factoring business. Plaintiff advances funds to its client's

12   by purchasing the client's accounts (as that term is defined in California *Commercial*

13   *Code* § 9102(a)(2)[1]). Plaintiff provides notice to all of the client's customers that

14   payments on all obligations owed to the client are to be paid directly to Plaintiff. After

15   the client sells an account, the client does not retain any legal or equitable interest in the

16   account sold. *See* California *Commercial Code* § 9318(a).[2]

---

[1]  California *Commercial Code* § 9102(a)(2) defines "Account" as "...a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, (ii) for services rendered or to be rendered, (iii) for a policy of insurance issued or to be issued, (iv) for a secondary obligation incurred or to be incurred, (v) for energy provided or to be provided, (vi) for the use or hire of a vessel under a charter or other contract, (vii) arising out of the use of a credit or charge card or information contained on or for use with the card, or (viii) as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state. The term includes health care insurance receivables. The term does not include (i) rights to payment evidenced by chattel paper or an instrument, (ii) commercial tort claims, (iii) deposit accounts, (iv) investment property, (v) letter-of-credit rights or letters of credit, or (vi) rights to payment for money or funds advanced or sold, other than rights arising out of the use of a credit or charge card or information contained on or for use with the card."

[2]  California *Commercial Code* § 9318(a) provides: "A debtor that has sold an account, chattel paper, payment intangible, or promissory note does not retain a legal or equitable interest in the collateral sold."

COMPLAINT

LEVINSON ARSHONSKY & KURTZ, LLP

## THE HARRY GROUP FACTORING AGREEMENT

10.    On September 15, 2010, for good and valuable consideration, Plaintiff and its client Harry Group, Inc., dba JMKC Express ("Harry Group") entered into a written Factoring and Security Agreement (the "Factoring Agreement") whereby, among other things, Plaintiff agreed to purchase accounts from Harry Group under an agreed upon formula based upon Harry Group's eligible accounts receivable.  A true and correct copy of the Factoring Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

11.    Pursuant to the Factoring Agreement, Harry Group granted to Plaintiff a security interest in all of its assets.  Plaintiff perfected its security interest in Harry Group's assets, including Harry Group's accounts, by filing a UCC-1 Financing Statement with the Office of the Secretary of State for the State of Nevada on October 3, 2008, bearing file stamp number 2008030690-5.  A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit B** and incorporated herein by reference.

## THE NOTICE OF ASSIGNMENT

12.    After purchasing Harry Group's accounts, on or about January 12, 2011, Plaintiff notified Harry Group's customer, Defendant Reddy Ice, that all obligations owed to Harry Group was to be paid directly to Plaintiff (the "Notice of Assignment"). A true and correct copy of the Notice of Assignment is attached hereto as **Exhibit C** and incorporated herein by reference.

## FIRST CLAIM FOR RELIEF

(Payment Over Notice Pursuant to Cal. *Com. Code* § 9406)

13.    Plaintiff realleges, refers to and incorporates by reference paragraphs 1 through 10, inclusive, of this Complaint as though fully set forth herein.

14.    Harry Group provided transportation, logistics and distribution services to Defendant that were evidenced by various invoices sent by Harry Group to Defendant.

LEVINSON ARSHONSKY & KURTZ, LLP

1  As indicated in the Notice of Assignment, payment for all such invoices was to be

2  made payable to and mailed directly to Plaintiff.

3       15.     A majority of the services provided by Harry Group were related to

4  transporting and storing Defendant's goods within this district and other areas of

5  Southern California.

6       16.     Beginning on or about January 12, 2011, after receipt of the Notice of

7  Assignment, Defendant made payments directly to Plaintiff as required.  However, in

8  or around April 2014, Defendant ceased making payments to Plaintiff on invoices due

9  and owing.  Invoices for services provided to Defendant in April through June 2014

10 ("Subject Invoices") remain unpaid.  True and correct copies of the Subject Invoices

11 are attached hereto as composite **Exhibit C** and are incorporated herein by reference.

12      17.     The amount of the payments that remain outstanding with respect to the

13 Subject Invoices is approximately $157,525.49 and the exact amount will be

14 determined according to proof.

15      18.     Defendant has not paid the Subject Invoices, despite demands by Plaintiff.

16 The Subject Invoices are presently due and owing to Plaintiff.

17      19.     To date, Defendant refuses to pay Plaintiff the amounts due and owing on

18 the Subject Invoices, plus applicable prejudgment interest agreed to by the parties or as

19 the Court may deem just and proper.

20      20.     As a result of Defendant's failure to pay, Plaintiff has incurred attorney's

21 fees for which Defendant is obligated to pay.

22                     **SECOND CLAIM FOR RELIEF**

23                          (For Account Stated)

24      21.     Plaintiff realleges, refers to and incorporates by reference paragraphs 1

25 through 17, inclusive, of this Complaint as though fully set forth herein.

26      22.     Plaintiff is informed and believes, and thereupon alleges that within four

27 (4) years last past, an account was stated by and between Defendant and Harry Group,

LEVINSON ARSHONSKY & KURTZ, LLP

28

reflecting a debt in the amount of $157,525.49, together with interest thereon at the rate agreed to by Defendant and Harry Group.  This debt is due and owing by Defendant to Plaintiff, and Plaintiff has the right to collect on such debt, as a result of the assignment of such debts to Plaintiff as indicated in the Notice of Assignment.

23.   Despite demand therefore, said sum has not been paid by Defendant to Plaintiff.

24.   There is now due and owing from Defendant to Plaintiff the sum of $157,525.49 together with interest thereon at the rate agreed to by the parties or as the Court may deem just and proper.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

1.   For damages according to proof but no less than $157,525.49, plus interest, fees and other charges that continue to accrue;

2.   For attorney's fees and costs; and

3.   For such other and further relief as the Court may deem just and proper.

Dated:  August 25, 2014          LEVINSON ARSHONSKY & KURTZ, LLP


By: ___*/s/ Angie S. Lee*_____
STEVEN N. KURTZ
skurtz@laklawyers.com
ANGIE S. LEE
alee@laklawyers.com
15303 Ventura Boulevard Suite 1650
Sherman Oaks, CA 91403
(818) 382-3434

LEVINSON ARSHONSKY & KURTZ, LLP

## **DEMAND FOR JURY TRIAL**

Plaintiff J D Factors LLC hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure and LR 38-1.

Dated:  August 25, 2014                      LEVINSON ARSHONSKY & KURTZ, LLP


By:   ___*/s/ Angie S. Lee*_____
         STEVEN N. KURTZ
         skurtz@laklawyers.com
         ANGIE S. LEE
         alee@laklawyers.com
         15303 Ventura Boulevard Suite 1650
         Sherman Oaks, CA 91403
         (818) 382-3434

Attorneys for Plaintiff J D FACTORS, LLC, a California limited liability company

LEVINSON ARSHONSKY & KURTZ, LLP

COMPLAINT

# EXHIBIT "A"


J D Factors

# FACTORING AND SECURITY AGREEMENT

This Factoring and Security Agreement (this "Agreement"), effective as of September 15, 2010, between the undersigned Harry Group, Inc. (hereinafter called "Client") a California company, with its principal business office located at 17511 Susana Rd., Compton, CA, 90221 and J D FACTORS LLC ("J D FACTORS"). Client and J D FACTORS agree as follows:

### PURPOSE OF AGREEMENT:
1.    Client desires to obtain financing by factoring, selling and assigning to J D FACTORS Acceptable Accounts at a discount below the face value of the invoices. Such financing is subject to the terms and conditions of the Agreement and is commercial in nature, and not for household, family, and/or personal use.

### DEFINITIONS:
2.    "Account" means all "Accounts" as defined in the UCC and all goods represented therefrom, including the rights of stoppage in transit, replevin and reclamation.
3.    "Acceptable Account" means an Account for which J D FACTORS has issued its approval of the credit standing of the Account Debtor and terms of the sale of goods or performance of services and which has not been withdrawn prior to the actual delivery of the goods or the performance of the services.
4.    "Customer" means Client's customer or the Account Debtor of J D FACTORS.
5.    "Collateral" means all of Clients Accounts, General Intangibles, Chattel Paper, Electronic Chattel Paper, Instruments, Deposit Accounts, Investment Property, Letters of Credit, Letters of Credit Rights, all proceeds of the foregoing and all books, records and computer data relating to the foregoing.
6.    "Credit Problem" means a Customer is unable to pay J D FACTORS on any Account purchased under this Agreement because of its financial inability to pay or an Insolvency Event.
7.    "Customer Dispute" means any dispute or claim, bona fide or not, as to the price, terms, quantity, quality or other possible defense to payment other than a Credit Problem or an Insolvency Event.
8.    "Environmental Laws" means any federal, state or local law, rule, regulation or order relating to pollution, waste disposal, industrial hygiene, land use or the protection of human health, safety, or welfare, plant life or animal life, natural resources, the environment or property.
9.    "Insolvency Event" means a filing by a Customer of any proceeding under the United States Bankruptcy Code or an assignment for the benefit of creditors.
10.   Maximum Purchase Limit: One Million Dollars ($1,000,000.00)
11.   "Misdirected Payment Fee" means Ten Percent (10%) of the face amount of any purchased Account which has been received by Client and not delivered to J D FACTORS in the next business day.
12.   "Obligations" means all obligations, liabilities and indebtedness of every nature of Client to J D FACTORS, monetary or non-monetary, under this Agreement or any other agreement, written or oral, between Client and J D FACTORS.
13.   "Reserve Account" means a bookkeeping account on the books of J D FACTORS representing an unpaid portion of the purchase price for the Acceptable Accounts, maintained by J D FACTORS to ensure Clients performance of the provisions of this Agreement.
14.   "Schedule of Accounts" means a form supplied by J D FACTORS to Client wherein Client lists such of its Accounts as it requests that J D FACTORS purchase under the terms of this Agreement.
15.   "Statement of Account" shall have that meaning set forth in Paragraph 51 herein.
16.   "UCC Definitions" – all capitalized terms not defined herein shall have the same meaning as proscribed in the Uniform Commercial Code ("UCC") as enacted in California.

### WARRANTIES AND COVENANTS BY CLIENT:
As an inducement for J D FACTORS to enter into this Agreement, and with full knowledge that the truth and accuracy of the representations and warranties in this Agreement are being relied upon by J D FACTORS in providing the financing hereunder, Client represents, warrants and/or covenants that:
17.   Client is properly licensed and authorized to operate the business of Transportation under the trade name(s) of JMKC Express and Client's trade name(s) has been properly registered, filed and published as required by all applicable laws. Client has fulfilled all the local, state and federal requirements of law in properly registering itself to do business at all addresses in which it is located.
18.   Client is in compliance with all applicable Environmental Laws.
19.   Client's business is solvent and is paying all undisputed debts as they become due. Client has made and shall continue to make timely payment and/or deposits of required taxes, namely employee withholding taxes for federal and state, sales, use and excise taxes, as well as any other federal, state and/or local tax requirements as they become due. Client will furnish, upon request by J D FACTORS, satisfactory proof of payment and/or compliance of any or all taxes required by law.
20.   Client has the power and authority to incur the Obligations.
21.   All financial records, statements, books or other documents shown to J D FACTORS by Client at anytime, either before or after the signing of this Agreement are true, complete, accurate, comply with general accepted accounting principals, and represent the true financial condition of Client.
22.   Client will not, under any circumstances or in any manner whatsoever, interfere with or impair any of J D FACTORS' rights under this Agreement.
23.   Client is the lawful owner of and has undisputed title to the Accounts purchased by J D FACTORS.
24.   Each Customer's business is solvent to the best of Client's information and knowledge and Client has not received any notice, either verbal or written, of a Credit Problem or an Insolvency Event.

Client's Initials

Exhibit A
9

25.   Client will maintain adequate insurance coverage for Client's business and/or the property of Client's Customers in an amount acceptable to J D FACTORS in its reasonable discretion, and, at the request of J D FACTORS, name J D FACTORS as loss payee of such insurance. Client shall furnish J D FACTORS upon written request: (a) all information concerning such insurance carried and (b) lender loss payable endorsements (or their equivalent) in favor of J D FACTORS.

26.   Each Account offered for sale to J D FACTORS is an accurate and undisputed statement of indebtedness by Customer to Client as a result of an absolute sale and not on consignment, or on approval, or hold basis, or guaranteed contract or subject to any other contingency and is for a certain sum which is due and payable in thirty days or less, or within such time as is agreed to, in writing by J D FACTORS and Client.

27.   Each Account offered for sale to J D FACTORS is an accurate statement of a bona fide sale, delivery and acceptance of merchandise or performance of service by Client to customer and is not subject to a Customer Dispute.

28.   Client does not own, control or exercise dominion over, in any way whatsoever, the business of any Customer/Account Debtor to be factored by Client to J D FACTORS.

29.   Client will not factor or sell Accounts except to J D FACTORS for the period of this Agreement, and/or for as long as any Obligations remain due and owing.

30.   Client will not grant a security interest in any of the Collateral without the written consent of J D FACTORS. In the event that a non-consensual lien is placed on any of the Collateral, Client shall have ten (10) days to remove or otherwise satisfy such lien.

31.   Client will not change or modify the terms of any Account purchased under this Agreement unless J D FACTORS first consents to such change in writing.

32.   Client will notify J D FACTORS in writing thirty (30) days prior to any change in the location of Client's place(s) of business, or if Client, has or intends to acquire any additional place(s) of business, or prior to any change in Client's chief executive office, the office or offices where Client's books and records concerning the Accounts are kept.

33.   Client will notify J D FACTORS in writing thirty (30) days prior to any proposed change of Client's name, identity, use of additional trade names, and/or any proposed change in any of the officers, principals, partners, and/or owners of Client.

34.   Client will not change its business structure, or sell, lease, transfer or otherwise dispose of all or substantially all of its property or assets, or consolidate with or merge into or with any business entity without the express written consent of J D FACTORS.

## COLLATERAL

35.   Security Interest/Collateral: As a further inducement for J D FACTORS to enter into this Agreement and in order to secure payment and performance of the Obligations, Client gives to J D FACTORS a first priority security interest in the Collateral.

36.   Authorization: Client authorizes J D FACTORS to file any document necessary to perfect J D FACTORS security interest in the Collateral and Client further agrees to execute any and all documents necessary to perfect J D FACTORS' security interest.

## ACCOUNT FUNDING AND OPERATING PROCEDURES

37.   Notification: J D FACTORS may at any time and at its sole discretion notify any Customer/Account Debtor of Client to make payments directly to J D FACTORS.

38.   Assignment: Client shall from time to time at its option sell, transfer and assign Accounts to J D FACTORS, which shall be presented to J D FACTORS on the Schedule of Accounts which shall be presented along with an original invoice together with one copy thereof, plus such other supporting documents ad J D FACTORS may require, including but not limited to bills of lading, proof of delivery, contracts, or purchase orders.

39.   Approval: J D FACTORS shall only purchase from Client Acceptable Accounts in its sole discretion and shall not be liable to Client or to any Account Debtor for its refusal to approve an Account. J D FACTORS approval of an Acceptable Account shall be automatically withdrawn in the event delivery of goods is not timely made or if Client has made any change in any of the terms of the purchased Account without J D FACTORS' prior written approval. J D FACTORS shall not purchase any Account if the purchase shall cause the Obligations to exceed the Maximum Purchase Limit.

40.   Discount: J D FACTORS agrees to buy Acceptable Accounts from Client that have been approved for purchase from Client at a discount (fee) of Six percent (6%) from the face value of each Account.

41.   Charges: J D FACTORS will deduct from each appropriate Sale of Accounts Receivable (Schedule of Accounts) of Client, J D FACTORS' standard wire transfer fee on all wire transfers and same-day or overnight courier service charges if used by Client.

42.   Reserve Account: In addition to the discount referred to in Paragraph 40 above, J D FACTORS will reserve and withhold an amount in a the Reserve Account an amount equal to N/A of the gross face amount of all Accounts purchased. The Reserve Account may be held by J D FACTORS and applied by J D FACTORS against charge-backs or to pay any of the Obligations. The Reserve Account is not due and payable to Client until all of the Obligations are fully paid and/or satisfied. Client gives to J D FACTORS a security interest in this reserve account which secures all obligations and indebtedness arising hereunder.

43.   Reserve Account Refund: Provided that there is no Event of Default and subject to the provisions of this Agreement, J D FACTORS shall, in its discretion, return to Client from the Reserve Account N/A of the gross purchase price of any individual Account, when the Account is paid in full and there are no other outstanding Obligations of Client to J D FACTORS known or anticipated. Refunds under this Paragraph shall be made within the first three (3) working days of the new month, unless otherwise agreed to by J D FACTORS in an addendum to this Agreement.

44.   Rebates: See Attached Addendum #1

45.   ACH: In order to facilitate the purchase of the Accounts and payments thereon, J D FACTORS may initiate debit or credit entries to any Deposit Account maintained by Client through the ACH. This Paragraph may only be terminated upon thirty (30) days notice to J D FACTORS.

46.   Recourse To Client On Purchased Accounts: J D FACTORS will have full recourse against CLIENT for any unpaid account(s) after Ninety (90) days days from the date of purchase by J D FACTORS.

47.   Notice Of Dispute: Client will immediately notify J D FACTORS of any Dispute between Customer and Client.

48.   Settlement Of Dispute: J D FACTORS may, but is not obligated to, settle or compromise any Dispute with a Customer in its sole discretion. Such settlement or compromise does not relieve Client of final responsibility for payment in full of the entire Account.

Client's Initials

Exhibit A

10

49.  Charge-Back: If Client does not fully settle the dispute within three (3) business days, J D FACTORS may, in addition to any other remedies under this Agreement, charge-back or sell back the Account to Client. If an Account is charged-back pursuant to this Agreement, title to the Account shall vest with J D FACTORS until the Account is repurchased by Client.

50.  Charge-Back For Invoicing Error: Mistaken, incorrect and/or erroneous invoicing, submitted by Client to J D FACTORS may, at J D FACTORS' discretion be deemed a disputed invoice and be charged-back to Client.

51.  Statement of Account: J D FACTORS shall mail to Client its Statement of Account or post it online on J D FACTORS website. Client shall have twenty five (25) days from the date the Statement of Account is mailed or posted to dispute the contents contained therein by written notice to J D FACTORS. If Client fails to timely notify J D FACTORS in writing of any dispute to the Statement of Account, it shall be deemed an account stated.

52.  Sole Property: Once J D FACTORS has purchased an Account, the Account and the payment from Customer as to that Account is the sole and exclusive property of J D FACTORS.

53.  Hold In Trust: Client will hold in trust and safekeeping, as the property of J D FACTORS, and, on the next business day, turn over to J D FACTORS the identical check or other form of payment received by Client, whenever any payment on an Account purchased by J D FACTORS comes into Client's possession. Should Client come into possession of a check or other form of payment comprising payments owing to both Client and J D FACTORS, Client shall, on the next business day, turn over said check or other form of payment to J D FACTORS. J D FACTORS will refund Client's portion to Client subject to any indebtedness due for which payment has not been arranged. The parties hereto agree that if any payment on account of a purchased Account which has been received by Client is not timely delivered to J D FACTORS, pursuant to this agreement it will be impractible or extremely difficult to determine the resulting damages suffered by J D FACTORS. It is therefore agreed that in the event of such a breach by Client, Client shall pay to J D FACTORS the Misdirected Payment Fee.

54.  Double Payments: Should J D FACTORS receive a double payment on an Account, or other payment which is not identified, J D FACTORS shall carry these sums as open items and shall return them directly to said Payer upon proper identification.

55.  Financial Records: Client will furnish J D FACTORS financial statements and information as requested by J D FACTORS from time to time.

56.  Notice Of Seizure: Client will promptly notify J D FACTORS of any attachment, seizure or any other legal process entered into or levied against Client or any of Client's Customers and shall have ten (10) days after such attachment, seizure or levy to release the assets or post an appropriate bond to secure their release.

57.  No Pledge: Client will not pledge the credit of J D FACTORS to any person or business for any purpose whatsoever.

58.  Book Entry: Client will immediately upon sale of Accounts to J D FACTORS, make proper entries on its books and records disclosing the absolute sale of the Accounts to J D FACTORS.

59.  Legal Fees: Client agrees to reimburse J D FACTORS on demand for: the actual amount of all costs and expenses, including attorneys' fees, which J D FACTORS has incurred or may incur in: (a) negotiating, preparing, or administering this Agreement and any documents prepared in connection herewith, all of which shall be paid contemporaneously with the execution hereof; (b)any way arising out of this Agreement; (c)enforcing or interpreting any provision of this Agreement; or (d) protecting, preserving or enforcing any lien, security interest or other right granted by Client to J D FACTORS or arising under applicable law, whether or not suit is brought.

60.  Power Of Attorney: In order to carry out this Agreement, Client appoints J D FACTORS or any person designated by J D FACTORS, it's special attorney in fact, coupled with an interest, with power to: (a) notify Customers that Client's Accounts have been assigned to J D FACTORS and that J D FACTORS has a security interest therein; (b) direct Client's Customers to make payment of all Accounts direct to J D FACTORS and forward invoices directly to such Customers; (c) Strike out Client's address on all Accounts mailed to Customers and put J D FACTORS' address on all Accounts; (d) receive, open and dispose of all mail addressed to Client, including Client's fictitious trade name via J D FACTORS' address; (e) endorse the name of Client including Client's fictitious trade name on any checks or other evidences of payment that may come into the possession of J D FACTORS on Accounts purchased by J D FACTORS or pursuant to default on any other documents relating to any of the Accounts or to Collateral. (f) in Client's name, or otherwise, demand, sue for, collect, and give releases for any and all monies due or to become due on Accounts; (e) compromise, prosecute, or defend any action, claim or proceeding as to the Accounts (g) from time to time offer trade discounts to Client's customer exclusive of Client's normal business custom with said Customer; (h) do any and all things necessary and proper to carry out the purpose intended by this Agreement and to protect Client's and J D FACTORS' interest in the Accounts or other Collateral; and (i) upon the happening of an Event of Default, notify the post office authorities to change the address for delivery of mail addressed to Client to such address as designated by J D FACTORS. The foregoing authority granted to J D FACTORS is irrevocable and shall remain in full force and effect until the Obligations are satisfied.

61.  Indemnification: Client shall indemnify and hold J D FACTORS harmless from and against any and all claims, debts, losses, demands, causes of actions, damages, penalties, judgments, liabilities, costs and expenses (including actual attorney's fees), of any kind or nature which J D FACTORS may sustain in connection with this Agreement, or any other present or future agreement between Client and J D FACTORS. Notwithstanding any other provision of this Agreement to the contrary, this indemnity provision shall survive termination of this Agreement.

**DEFAULTS AND REMEDIES**

62.  Events Of Default: The following events will constitute an Event of Default: (a) Client defaults in the payment of any of the Obligations or in the performance of any provision hereof or of any other agreement now or hereafter entered into with J D FACTORS, or any warranty or representation herein proves to be false in any way, howsoever minor; (b) Client or any guarantor of the Obligations becomes subject to any bankruptcy or similar insolvency proceeding; (c) any such guarantor fails to perform or observe any of such guarantor's Obligations to J D FACTORS or shall notify J D FACTORS of its intention to rescind, modify, terminate or revoke any guaranty of the Obligations, or any such guarantor shall cease to be in full force and effect for any reason whatsoever; or (d) J D FACTORS for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of any of the Obligations.

63.  Remedies After Default: Upon the occurrence of any Event of Default, and at any time thereafter, Factor, at its option, and without notice or demand of any kind (all of which are hereby expressly waived by Client) may do any one or more of the following: (a) Cease advancing money or extending credit to or for the benefit of Client under this Agreement, and any other document or agreement; (b) Accelerate and declare all or any part of the Obligations to be immediately due, payable, and performable, notwithstanding any deferred or installment payments allowed by any instrument evidencing or relating to any Obligation; (c) Take possession of any or all of the Collateral wherever it may be found, and for that

Client's Initials

Exhibit A

11

purpose Client hereby authorizes J D FACTORS without judicial process to enter onto any of the Client's premises without hindrance to search for, take possession of, keep, store, or remove any of the Collateral and remain on such premises or cause a custodian to remain thereon in exclusive control thereof without charge for so long as J D FACTORS deems necessary in order to complete the enforcement of its rights under this Agreement or any other agreement; provided, however, that should J D FACTORS seek to take possession of any or all of the Collateral by Court process or through a receiver, Client hereby irrevocable waives: (i) any bond and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession; (ii) any demand for possession prior to the commencement of any suit or action to recover possession thereof; and (iii) any requirement that J D FACTORS retain possession of and not dispose of any such Collateral until after trial or final judgment; (d) Require Client to assemble any or all of the Collateral and make it available to J D FACTORS at a place or places to be designated by J D FACTORS which is reasonably convenient to J D FACTORS and Client, and to remove the Collateral to such locations as J D FACTORS may deem advisable; (e) place a receiver in exclusive control of Client's business and/or any or all of the Collateral, in order to assist Factor in enforcing its rights and remedies (f) Sell, ship, reclaim, lease or otherwise dispose of all or any portion of the Collateral in its condition at the time J D FACTORS obtains possession or after further manufacturing, processing or repair; at any one or more public and / or private sale(s) (including execution sales); in lots or in bulk; for cash, exchange for other property or on credit; and to adjourn any such sale from time to time without notice other than oral announcement at the time scheduled for sale. J D FACTORS shall have the right to conduct such disposition on Client's premises without charge for such time or times as J D FACTORS deems fit, or on J D FACTORS' premises, or elsewhere and the Collateral need not be located at the place of disposition. J D FACTORS may directly or through any affiliated company purchase or lease any Collateral at any such public disposition and, if permissible under applicable law, at any private disposition. Any sale or other disposition of Collateral shall not relieve Client of any liability Client may have if any Collateral is defective as to title or physical condition at the time of sale; (g) Demand payment of, and collect any Accounts, Instruments, Chattel Paper, Supporting Obligations and General Intangibles comprising part or all of the Collateral; (h) Demand and receive possession of any of Client's federal and state income tax returns and the books, records and accounts utilized in the preparation thereof or referring thereto. Any and all attorneys' fees, expenses, costs, liabilities and obligations incurred by J D FACTORS with respect to the foregoing shall be added to and become part of the Obligations, shall be due on demand, and shall bear interest at a rate equal to the highest interest rate applicable to any of the Obligations.

64. Deficiency: The proceeds received by J D FACTORS from the disposition of or collection of any of the Collateral shall be applied to such extent and in such manner as J D FACTORS shall determine in its sole discretion. The surplus, if any, shall be paid to Client; if any deficiency shall arise, Client shall remain liable to J D FACTORS therefore. In the event that, as a result of the disposition of any of the Collateral, J D FACTORS directly or indirectly enters into a credit transaction with any third party, J D FACTORS shall have the option, exercisable at any time, in its sole discretion, of either reducing the Obligations by the principal amount of such credit transaction or deferring the reduction thereof until the actual receipt by J D FACTORS of cash therefore from such third party.

## MISCELLANEOUS PROVISIONS

65. Termination: This Agreement shall continue in full force and effect until terminated by certified written notice by either party.

66. Post Termination: After termination Client shall be liable to J D FACTORS for the full and prompt payment of the full amount of factored Accounts which are then outstanding and unpaid, disputed or undisputed, as well as any other indebtedness due J D FACTORS. J D FACTORS continues to have a security interest in the Collateral of Client until all indebtedness of Client to J D FACTORS is paid in full.

67. Binding On Future Parties: This Agreement inures to the benefit of and is binding upon the heirs, executors, administrators, successors and assigns of the parties thereto and may not be assigned by Client without J D FACTORS' prior written consent.

68. Cumulative Rights: All rights, remedies and powers granted to J D FACTORS in this Agreement, or in any note or other agreement given by Client to J D FACTORS, are cumulative and may be exercised singularly or concurrently with such other rights as J D FACTORS may have. These rights may be exercised from time to time as to all or any part of the pledged Collateral as J D FACTORS in its discretion may determine.

69. Payment In Full Checks: Client authorizes J D FACTORS to accept, indorse and deposit on behalf of Client any checks tendered by an Account Debtor "in full payment" of its obligation to Client. Client shall not assert against J D FACTORS any claim arising therefrom, irrespective of whether such action by J D FACTORS affects an accord and satisfaction of Client's claims, under Sec. 3311 of the Uniform Commercial Code as enacted in California.

70. State Law: This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without regard to conflict of laws or principals.

71. Invalid Provisions: If any provision of this Agreement shall be declared illegal or contrary to law, it is agreed that such provision shall be disregarded and this Agreement shall continue in full force and effect as though such provision had not been incorporated herein.

72. Entire Agreement: This instrument contains the entire Agreement between the parties. Any addendum or modification hereto will be signed by both parties and attached hereto.

73. Effective: This Agreement becomes effective when it is accepted and executed by an authorized representative of J D FACTORS.

74. Destruction Of Client's Documents; Limitations Of Actions: Any documents, schedules, invoices or other papers delivered to J D FACTORS may be destroyed or otherwise disposed of by J D FACTORS six (6) months after the same are delivered to J D FACTORS, unless Client makes written request therefore and pays all expenses attendant to their return, in which event J D FACTORS shall return same when J D FACTORS' actual or anticipated need therefore has terminated. Client agrees that any claim or cause of action by Client against J D FACTORS, its directors, officers, employees, agents, accountants or attorneys, based upon, arising from, or relating to this Agreement, or any other present or future agreement, or any other matter, cause or thing whatsoever, occurred, done, omitted or suffered to be done by J D FACTORS, its directors, officers, employees, agents, accountants, or attorneys, relating in any manner to Client, shall be barred unless asserted by Client by the commencement of an action or proceeding in a court of competent jurisdiction by the filing of a complaint within six (6) months after the first act, occurrence, or omission upon which claim or cause of action, or any part thereof, is based, and the service of a summons and complaint on an officer of J D FACTORS, or on any other person authorized to accept service on behalf of J D FACTORS, within thirty (30) days thereafter. Client agrees that such six month period provided herein shall not be waived, tolled, or extended except by the written consent of J D FACTORS in its sole discretion. This provision shall survive any termination of this Agreement or any other agreement.

75. Venue; Jurisdiction: The parties agree that any suit, action or proceeding arising out of the subject matter of this Agreement, or the interpretation, performance or breach of this Agreement, shall, if J D FACTORS so elects, be instituted in the appropriate state or federal court located in the County of Los Angeles (the "Acceptable Forums"), each party agrees that the Acceptable Forums are convenient to it, and each

Client's Initials

party irrevocably submits to the jurisdiction of the Acceptable Forums, and waives any and all objections to jurisdiction or venue that it may have under the Laws of the State of California or otherwise in those courts in any such suit, action or proceeding. Should such proceeding be initiated in any other forum other than an Acceptable Forum, Client agrees that it shall not contest any action by J D FACTORS to move such matter to a proper court within the Acceptable Forums.

76.   Term Of Agreement: This Security Agreement shall remain in full force and effect for Twelve (12) months from the date of execution of this addendum. J D FACTORS shall reserve the right to terminate the Security Agreement at its discretion. CLIENT must notify J D FACTORS in writing of intention to terminate this agreement thirty (30) days prior to expiration of this agreement. This agreement will be automatically renewed for another Twelve (12) months on a continuing basis if no such written termination notice is given by CLIENT within thirty (30) days of expiration. Receipt of such notice must be acknowledged by J D FACTORS. In the event of early termination, CLIENT shall pay to J D FACTORS a penalty of Two percent (2%) of the Maximum Purchase Limit defined in section 10 of the Security Agreement.

77.   Trial By Judicial Reference: THE PARTIES AGREE THAT ANY CIVIL ACTION OR PROCEEDING INVOLVING A DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT, SHALL BE TRIED SOLELY THROUGH A JUDICIAL REFERENCE AS PROVIDED IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES FURTHER AGREE TO THE APPOINTMENT OF JAMS AS THE REFEREE APPOINTED TO CONDUCT THE TRIAL AND SUCH OTHER RELATED PROCEEDINGS. THE PARTIES FURTHER AGREE THAT THE FILING OF ANY LAW AND MOTION HEARINGS OR THE INITIATION OF ANY HEARINGS TO OBTAIN ANY FORM OF A PREJUDGMENT REMEDY SHALL NOT OPERATE AS A WAIVER OF THE PARTIES RIGHT TO TRIAL SOLELY THROUGH A JUDICIAL REFERENCE. THE PARTIES ACKNOWLEDGE THAT THE JUDICIAL REFEREE WILL LIKELY CHARGE FEES AND COSTS OVER AND ABOVE THE FEES AND COSTS NORMALLY CHARGED BY A COURT. THE PARTIES HERETO AGREE TO INITIALLY EVENLY SPLIT THE FEES AND COSTS OF SUCH REFEREE BETWEEN THE PARTIES. NOTWITHSTANDING THE FOREGOING, THE PARTIES FURTHER ACKNOWLEDGE THAT THE REFEREE MAY DECIDE THAT ONE PARTY OR THE OTHER IS THE PREVAILING PARTY IN WHICH EVENT THE NON-PREVAILING PARTY WILL BE OBLIGATED TO REIMBURSE THE PREVAILING PARTY FOR ALL OF THE COSTS AND FEES PAID IN CONNECTION WITH THE HIRING OF THE REFEREE.

Executed and accepted this _15_ day of _Sept. 2010_ at _Torrance Ca. 90501_
                                                        Month/Year                          City/State

Harry Group Inc.

By _Tom Villardi_
      Tom Villardi - President

By _Georgianna Villardi_
      Georgianna Villardi - Secretary

By _____
      Signature

_____
      Print Name & Title

By _____
      Signature

_____
      Print Name & Title

Sworn and subscribed before me this _____ day
of _____, 20_____

_____
                  NOTARY PUBLIC

CLIENT'S signatures witnessed by:

By _____
                                    Signature

_Brad Miller / BDO_
      Name and Title

Accepted this _16th_ day of _September_ 20 _10_
at _Palos Verdes, CA_
                              City and State

J D FACTORS, LLC

By _Bo Kelly_
      Bo Kelly - Executive Vice President

Client's Initials

Exhibit A
13



J D Factors

# ADDENDUM #1

This addendum refers to that certain security agreement dated for purposes of reference September 15, 2010 between the undersigned Harry Group, Inc., hereinafter called "CLIENT" and J D FACTORS, LLC, its successors, assigns, affiliates, subsidiaries and related entities, hereinafter "J D FACTORS" and refers to the items below:

44.   REBATES:  As an inducement to CLIENT to sell only the accounts from which prompt payments can be expected directly from customer, J D FACTORS offers to return to CLIENT a rebate as a percentage of the discount charged.  Such rebates will result in the net discounts listed below:

Fee Rebates are based on days outstanding and monthly volume. NET FEES AS FOLLOWS (%):

| | | | Monthly Volume | | |
|---|---|---|---|---|---|
| Outstanding | $100K+ | $50K - $100K | $25K - $50K | $10K - $25K | $0 - $10K |
| 1 - 10 Days | 0.57 % | 1.57 % | 2.57 % | 3.57 % | 5.57 % |
| 11 - 20 Days | 1.14 % | 2.14 % | 3.14 % | 4.14 % | 6 % |
| 21 - 30 Days | 1.71 % | 2.71 % | 3.71 % | 4.71 % | 6 % |
| 31 - 40 Days | 2.28 % | 3.28 % | 4.28 % | 5.28 % | 6 % |
| 41 - 50 Days | 2.85 % | 3.85 % | 4.85 % | 5.85 % | 6 % |
| 51 - 60 Days | 3.42 % | 4.42 % | 5.42 % | 6 % | 6 % |
| 61 - 70 Days | 3.99 % | 4.99 % | 5.99 % | 6 % | 6 % |
| 71- 80 Days | 4.56 % | 5.56 % | 6 % | 6 % | 6 % |
| 81 - 90 Days | 5.13 | 6 % | 6 % | 6 % | 6 % |
| 91 + Days | 6 % | 6 % | 6 % | 6 % | 6 % |

This addendum refers only to the above item(s) and does not change the purpose and intent of the security agreement which remains in full force and effect.

Executed and accepted this _____15_____ day of __Sept 2010__, at __Torrance - Ca 9050__
                                   Month/Year                City/State

| | |
|---|---|
| Harry Group, Inc. | CLIENT'S signatures witnessed by: |
| By _Tom Villardi_ | By _J B_ |
| Tom Villardi - President | Signature |
| By _Georgianna Villardi_ | _Brad miller / BDO_ |
| Georgianna Villardi - Secretary | Name and Title |
| Sworn and subscribed before me this _____ day | Accepted this _16th_ day of _September_ 20 _10_ |
| of _____, 20_____ | at _Palos Verdes, CA_ |
| | City and State |
| NOTARY PUBLIC | J D FACTORS, LLC |
| | By _Bo Kelly_ |
| | Bo Kelly - Executive Vice President |

Exhibit A

14



J D Factors

# CONTINUING GUARANTY & WAIVER

Reference is made to the Security Agreement (herein "AGREEMENT") dated September 15, 2010 and entered into between Harry Group, Inc. (herein "Company") and J D Factors, LLC (herein "J D FACTORS").

For valuable consideration and to induce J D FACTORS to enter into AGREEMENT, the undersigned agrees as follows:

1.   GUARANTY OF OBLIGATIONS: The undersigned, jointly and severally, unconditionally guaranty to J D FACTORS full payment and prompt and faithful performance by the Company of all of its present and future indebtedness and obligations to J D FACTORS which may arise pursuant to AGREEMENT. The words "indebtedness" and "obligations" are used herein in their most comprehensive sense and include any and all advances, debts, obligations, and liabilities of the Company heretofore, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether the Company may be liable individually or jointly with others, or whether recovery may be or hereafter become barred by any statute of limitations or otherwise become unenforceable. Said indebtedness and obligations guaranteed hereunder shall be collectively referred to herein as "Obligations".
2.   RIGHTS ARE INDEPENDENT: The Obligations of the undersigned are independent of the obligations of the Company under AGREEMENT and separate action or actions may be brought and prosecuted by J D FACTORS against the undersigned whether or not an action is brought against the Company or whether the Company is joined in any such action or actions.
3.   WAIVER OF DEFENSE: The undersigned waives any right to require J D FACTORS to proceed against the Company, the account-debtor or customer of the Company, or any other person, or proceed against or exhaust any security, or pursue any other remedy in J D FACTORS' power.
4.   CONTINUING GUARANTY: It is the intention of the undersigned that this Agreement shall constitute a continuing guaranty of the Obligations of the Company under AGREEMENT and any addenda or modifications thereto.
5.   DEFAULT: Any one or more of the following shall be a default hereunder:
(a)  any default in payment or performance of any instrument, or of the Obligations hereby guaranteed; or (b)  any warranty, representation, statement, or report made or delivered to J D FACTORS by or on behalf of the Company, or the undersigned, is incorrect, false, untrue or misleading when given in any material respect whatsoever; or (c)  there shall occur the dissolution of the Company or the transfer, hypothecation or liquidation of all or substantially all of the Company's assets; or (d)  the undersigned shall sell, transfer, convey or in any manner alienate its interest in the Company.  In the event of any of the foregoing, the Obligations hereby guaranteed shall become, for the purpose of this Agreement, due and payable by the undersigned forthwith without demand or notice.
6.   AUTHORITY OF OFFICERS: It is not necessary for J D FACTORS to inquire into the powers of the Company or the officers, directors, agents, acting or purporting to act in its behalf and any Obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.
7.   PARTNERSHIP OR ASSOCIATION: When the Company is a partnership or other association, this Agreement is to extend to the person or persons for the time being and from time to time carrying on the business now conducted by the Company, notwithstanding any change or changes in the name, structure and/or membership of the Company.
8.   FINANCIAL CONDITION OF COMPANY: The undersigned represent to J D FACTORS that they are now and will be completely familiar with the business, operation and overall economic condition of the Company and they hereby waive and relinquish any duty on the part of J D FACTORS to disclose any matter, fact, or thing relating to the business, operation or financial condition of the Company now known or hereafter known by J D FACTORS.
9.   GUARANTOR'S DIRECT BENEFIT: The undersigned hereby represent and warrant that it is in undersigned's direct interest to assist the Company because of the undersigned's position(s) and economic relation(s) with the Company.
10.  ATTORNEY'S FEES: Whether or not suit be instituted, the undersigned agree to pay reasonable attorney's fees and all other costs and expenses incurred by J D FACTORS in enforcing this Agreement and in any action or proceedings arising out of or relating to this Agreement.
11.  SUCCESSORS AND ASSIGNS: This Agreement shall bind the successors and assigns of the undersigned and shall inure to the benefit of J D FACTORS and its successors, assigns, affiliates, subsidiaries and related entities.
12.  GOVERNING LAW: This Agreement shall be governed by, and construed in accordance with the laws of the State of California.
13.  JURISDICTION/WAIVER OF JURY TRIAL: The undersigned as guarantors of the Company, hereby consents to the exclusive jurisdiction of the local, state or federal court located with the State of California. The undersigned, as guarantors of the Company, hereby unconditionally waives its right to a jury trial in any suit or proceeding arising or relating to this Agreement. Agreed to: _____ initials.
14.  SEVERABILITY: In case any right of J D FACTORS herein shall be held to be invalid, illegal, or unenforceable, such invalidity, illegality and/or unenforceability, shall not affect any other right granted hereby.
15.  JOINT AND SEVERAL: All of the obligations of the undersigned shall be joint and several.

Executed this _15_ day of _September_, 20_10_ at (City) _Torrance_, (State) _CA_

Signature: _Tom Villardi_                    Sworn and subscribed before me this _____ day of

Name (An Individual): Tom Villardi            _____, 20_____
Residential Address:
25 Crestwind Drive                            _____
Rancho Palos Verdes, CA 90275                            Notary Public

witnessed by: J B___
Brad Miller / BDO

Exhibit A
15



J D Factors

# CONTINUING GUARANTY & WAIVER

Reference is made to the Security Agreement (herein "AGREEMENT") dated September 15, 2010 and entered into between Harry Group, Inc. (herein "Company") and J D Factors, LLC (herein "J D FACTORS").

For valuable consideration and to induce J D FACTORS to enter into AGREEMENT, the undersigned agrees as follows:

1.  GUARANTY OF OBLIGATIONS:  The undersigned, jointly and severally, unconditionally guaranty to J D FACTORS full payment and prompt and faithful performance by the Company of all of its present and future indebtedness and obligations to J D FACTORS which may arise pursuant to AGREEMENT. The words "indebtedness" and "obligations" are used herein in their most comprehensive sense and include any and all advances, debts, obligations, and liabilities of the Company heretofore, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and whether the Company may be liable individually or jointly with others, or whether recovery may be or hereafter become barred by any statute of limitations or otherwise become unenforceable.  Said indebtedness and obligations guaranteed hereunder shall be collectively referred to herein as "Obligations".
2.  RIGHTS ARE INDEPENDENT:  The Obligations of the undersigned are independent of the obligations of the Company under AGREEMENT and separate action or actions may be brought and prosecuted by J D FACTORS against the undersigned whether or not an action is brought against the Company or whether the Company is joined in any such action or actions.
3.  WAIVER OF DEFENSE:  The undersigned waives any right to require J D FACTORS to proceed against the Company, the account-debtor or customer of the Company, or any other person, or proceed against or exhaust any security, or pursue any other remedy in J D FACTORS' power.
4.  CONTINUING GUARANTY:  It is the intention of the undersigned that this Agreement shall constitute a continuing guaranty of the Obligations of the Company under AGREEMENT and any addenda or modifications thereto.
5.  DEFAULT:  Any one or more of the following shall be a default hereunder:
(a)  any default in payment or performance of any instrument, or of the Obligations hereby guaranteed; or (b)  any warranty, representation, statement, or report made or delivered to J D FACTORS by or on behalf of the Company, or the undersigned, is incorrect, false, untrue or misleading when given in any material respect whatsoever; or (c)  there shall occur the dissolution of the Company or the transfer, hypothecation or liquidation of all or substantially all of the Company's assets; or (d)  the undersigned shall sell, transfer, convey or in any manner alienate its interest in the Company.  In the event of any of the foregoing, the Obligations hereby guaranteed shall become, for the purpose of this Agreement, due and payable by the undersigned forthwith without demand or notice.
6.  AUTHORITY OF OFFICERS:  It is not necessary for J D FACTORS to inquire into the powers of the Company or the officers, directors, agents, acting or purporting to act in its behalf and any Obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.
7.  PARTNERSHIP OR ASSOCIATION:  When the Company is a partnership or other association, this Agreement is to extend to the person or persons for the time being and from time to time carrying on the business now conducted by the Company, notwithstanding any change or changes in the name, structure and/or membership of the Company.
8.  FINANCIAL CONDITION OF COMPANY:  The undersigned represent to J D FACTORS that they are now and will be completely familiar with the business, operation and overall economic condition of the Company and they hereby waive and relinquish any duty on the part of J D FACTORS to disclose any matter, fact, or thing relating to the business, operation or financial condition of the Company now known or hereafter known by J D FACTORS.
9.  GUARANTOR'S DIRECT BENEFIT:  The undersigned hereby represent and warrant that it is in undersigned's direct interest to assist the Company because of the undersigned's position(s) in and economic relation(s) with the Company.
10.  ATTORNEY'S FEES:  Whether or not suit be instituted, the undersigned agree to pay reasonable attorney's fees and all other costs and expenses incurred by J D FACTORS in enforcing this Agreement and in any action or proceedings arising out of or relating to this Agreement.
11.  SUCCESSORS AND ASSIGNS:  This Agreement shall bind the successors and assigns of the undersigned and shall inure to the benefit of J D FACTORS and its successors, assigns, affiliates, subsidiaries and related entities.
12.  GOVERNING LAW:  This Agreement shall be governed by, and construed in accordance with the laws of the State of California.
13.  JURISDICTION/WAIVER OF JURY TRIAL:  The undersigned as guarantors of the Company, hereby consents to the exclusive jurisdiction of the local, state or federal court located with the State of California.  The undersigned, as guarantors of the Company, hereby unconditionally waives its right to a jury trial in any suit or proceeding arising or relating to this Agreement. Agreed to: _GV_ initials.
14.  SEVERABILITY:  In case any right of J D FACTORS herein shall be held to be invalid, illegal, or unenforceable, such invalidity, illegality and/or unenforceability, shall not affect any other right granted hereby.
15.  JOINT AND SEVERAL:  All of the obligations of the undersigned shall be joint and several.

Executed this _15_ day of _September_, 20 _10_ at (City) _Torrance_, (State) _CA_.

Signature _Georgianna Villardi_

Name (An Individual): Georgianna Villardi
Residential Address:
25 Crestwind Drive
Rancho Palos Verdes, CA 90275

Sworn and subscribed before me this _____ day of

_____, 20_____

_____
Notary Public

witnessed by: JRD
Brad Miller / BDO

Exhibit A
16



J D Factors

# CERTIFIED COPY OF RESOLUTIONS

"RESOLVED, that the agreement dated September 15, 2010 between Harry Group, Inc. and J D Factors, LLC and all other agreements and documents connected therewith be, and the same hereby are, approved on the terms and conditions as set forth therein";

"RESOLVED, that any officer of this company be, and hereby is, authorized and directed to enter into said agreement and all other agreements and documents connected therewith and to execute the same for and on behalf of this company on the terms and conditions set forth therein";

"RESOLVED, that any officer of this company be, and he hereby is, authorized and directed to negotiate, agree upon, execute and deliver, from time to time, in the name of, and on the behalf of, this company, such agreements, amendments, and supplements to said agreement or any other agreement or document connected therewith, documents, instruments, certificates, notices and further assurances and to perform any and all such acts and things as may be required by J D Factors, LLC in connection with said agreement or any other agreement or document connected therewith, or may to him seem necessary or proper to implement and effect complete consummation of said agreement or any other agreement or document connected therewith in all respects and the purposes set forth in these resolutions";

"RESOLVED, that these resolutions shall remain in full force and effect until written notice of their amendment or repeal shall be received by J D Factors, LLC and until all indebtedness and obligations arising out of said agreement and all other agreements and documents connected therewith shall have been paid and satisfied in full"

The undersigned, _Georgianna Villardi_, as duly constituted Secretary of Harry Group, Inc. does hereby certify that the foregoing is a true and correct copy of the resolutions duly adopted at a meeting of the Board of Directors of Harry Group, Inc., a(n) California company, duly called, noticed and held on _Sept 15 2010_, at which meeting there was at all times present and acting a quorum of the members of said Board; that said resolutions are in full force and effect; and that the following is a true and correct list of the present officers of this corporation.

_____ , President        - - - - - - - - - - - - -

_____ , Vice President

_Georgianna Villardi_ , Secretary

_____ , _____

                          ,

_Georgianna Villardi_
Signature of Corporate Secretary

Dated _Sept 15_ _____ , _2010_

Exhibit A
17

# EXHIBIT "B"

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
TRACY HUFF

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

First Corporate
solutions

FNT 37523

914 S Street,
Sacramento, CA 95811

SAC:_____

| Filed in the office of | Document Number |
|---|---|
| *[signature]* Ross Miller Secretary of State State of Nevada | 2008030690-5 |
| | Filing Date and Time 10/03/2008 11:35 AM |

(This document was filed electronically.)
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| HAPPY GROUP, INC. | | | | |

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 17511 SUSANA ROAD | COMPTON | CA | 90221 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION CORPORATION | 1f. JURISDICTION OF ORGANIZATION NV | 1g. ORGANIZATIONAL ID #, if any C2714399 | ☐ NONE |
|---|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JIMKO EXPRESS | | | | |

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 17511 SUSANA ROAD | COMPTON | CA | 90221 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION DBA | 2f. JURISDICTION OF ORGANIZATION CA | 2g. ORGANIZATIONAL ID #, if any | ☑ NONE |
|---|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| J D FACTORS, LLC | | | | |

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 500 SILVER SPUR ROAD #306 | PALOS VERDES | CA | 90275 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL PRESENTLY EXISTING OR HEREINAFTER ARISING, NOW OWNED OR HEREINAFTER ACQUIRED ACCOUNTS,
ACCOUNTS RECEIVABLE, CONTRACT RIGHTS, CHATTEL PAPER, DOCUMENTS, INSTRUMENTS, RESERVES,
RESERVE ACCOUNTS, REBATES, AND GENERAL INTANGIBLES, AND ALL BOOKS AND RECORDS PERTAINING
TO ACCOUNTS AND ALL PROCEEDS OF THE FOREGOING PROPERTY.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

2013022131-2

2013022131-2

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

Matt Johnson

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

J D Factors-CA
500 Silver Spur Road Suite 306

Rancho Palos Verdes CA. 90275

UCC3-37523.1                          Nevada Secretary of State

2013022131-2
8/29/2013
This acknowledgment reflects the information as transmitted to the Nevada Secretary of State.

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 2008030690-5   10/3/2008 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND  Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b; and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Harry Group, Inc. | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| J D Factors, LLC | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Exhibit B
20

# EXHIBIT "C"

**REDACTED**

## JMKC Express
P.O. Box 2579 • Palos Verdes Peninsula, CA 90274 • Phone: (866) 565-2599

## NOTICE OF ASSIGNMENT

January 12, 2011

Reddylce Holdings Inc
PO Box 16997
Lubbock, TX 79490-6997
**ATTN: ACCOUNTS PAYABLE MANAGER**

In order to accommodate the changes and growth in our business, we have been fortunate to obtain the services of  J D Factors as a source of capital funding.  The availability of this service will enable us to serve our customers in a more efficient manner.  Therefore, we notify you that we have assigned to J D Factors, LLC all present and future amounts owing by you to us.  Please make your checks for all invoices from **JMKC Express** PAYABLE TO AND REMITTED DIRECTLY TO:

| **Mailing Address** | **ACH/Electronic Funds Transfer** |
|---|---|
| **J D FACTORS, LLC** | Wells Fargo Bank, N.A. |
| Assignee for: JMKC Express (MC#: 377137) | ABA/Routing No: ████████ |
| PO Box 3428 | Credit Acct #: ████████ |
| Palos Verdes, CA  90274 | Beneficiary: J D Factors, LLC |
| | E-mail Remittance: accounting@jdfactors.com |

J D Factor's interest has been duly registered in accordance with the appropriate state and local statutes.

We would appreciate an acknowledgement of this notification and confirmation that this assignment and direction have been recorded in your accounts payable offices.  Please sign the acknowledgement copy of this letter and forward it to J D Factors.

If there are any questions concerning your billing, please call J D Factors at (310) 544-5141, or fax to (310) 544-5142.

This notice of assignment and direction remains in full force and effect until you are again notified by both the undersigned and J D Factors in writing to the contrary.

Sincerely,

J D Factors

Stephen F. Johnson - President

JMKC Express

Tom Villardi - President

P.S.  Please sign and fax or mail to J D Factors.  Thank you.

COMPANY NAME _____

ACKNOWLEDGED BY _____
                        Signature                                    Date

                   _____
                        Print Name and Title

Exhibit C
22

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| J D Factors, LLC, a California limited liability company<br><br>_Plaintiff(s)_<br>v.<br>Reddy Ice Holdings, Inc. a Delaware Corporation.<br><br>_Defendant(s)_ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

CV14-06709 DDP (FFMx)

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_
Reddy Ice Holdings, Inc.
% CT Corporation System
818 West Seventh Street 2nd Floor
Los Angeles, CA 90017

462 North 8th Street
Brawley, CA 92227

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
Steven N. Kurtz, Esq.
Angie S. Lee, Esq.
Levinson Arshonsky & Kurtz LLP
15303 Ventura Blvd. Suite 1650
Sherman Oaks, CA 91403

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: 8/26/2014

_Signature of Clerk or Deputy Clerk_

1170

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ❐ I returned the summons unexecuted because _____ ; or

    ❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $     0     .

I declare under penalty of perjury that this information is true.


Date: _____

                                  _____
                                         *Server's signature*

                                  _____
                                        *Printed name and title*



                                  _____
                                         *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
J D Factors, LLC

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
Reddy Ice Holdings, Inc.

**(b) County of Residence of First Listed Plaintiff** Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant** _____
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Angie S. Lee [SBN 254018]
Levinson Arshonsky & Kurtz LLP
15303 Ventura Blvd. Suite 1650, Sherman Oaks, CA 91403
(818) 382-3434

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ 157,525.49 + interest, fee costs

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332, (1) Payment Over Notice; and (2) Account Stated

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☒ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: CV14-06709

CV-71 (06/14)   **CIVIL COVER SHEET**   Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | B.1. Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.2. Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | C.1. Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes  ☒ No | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.2. Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A? | D.2. Is there at least one answer in Column B? |
|---|---|
| ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes  ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any cases previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____    DATE: 8/25/14

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |